Scott A. Ewing
Law Office of Scott A. Ewing, PLC
177 N. Church Ave. Suite 200
Tucson, AZ 85701
State Bar No. 030375
scott@azcivilrightsattorney.com
(520) 777-3398

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| RAYMOND COLLINS, | ) |
| | ) |
| Plaintiff, | ) No. |
| | ) |
| V. | ) |
| | ) COMPLAINT |
| CITY OF TUCSON, a political subdivision of the State of Arizona; Officer PEDERSEN, in his individual capacity and as an employee of the Tucson Police Department, | ) |
| | ) |
| Defendants. | ) |

Plaintiff RAYMOND COLLINS alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff RAYMOND COLLINS is a resident of Pima County, in the State of Arizona.

2. Officer PEDERSEN is an employee of the Tucson Police Department, or was an employee at the time of the incident described in this Complaint.

1

3. This case involves a federal question, and the United States District Court has jurisdiction under 28 U.S.C. § 1331.

4. Based upon the foregoing allegations, jurisdiction and venue are proper.

## FACTUAL ALLEGATIONS

5. On November 5, 2015 Officer Pederson of the Tucson Police Department responded to a report of a carjacking attempt near Tucson Avenue and Beverly Street, in Tucson, Arizona.

6. On November 5, 2015, Raymond Collins left a friend's house on foot and walked down 22nd street, waiting for a friend to pick him up.

7. Mr. Collins was talking on his cell phone with the friend that was going to pick him up.

8. As he saw a car approach him, Mr. Collins told his friend on the phone that he could see him, but his friend replied that it was not him.

9. When the vehicle got about 20-25 yards away from Mr. Collins, a spotlight was turned on.

10. Mr. Collins believed this to be a police officer on routine patrol in the neighborhood.

11. Mr. Collins had a gun tucked in the back of his waistband, and knew that he was a prohibited possessor.

12. Mr. Collins ran west on the north side of 22nd Street and saw 5-8 other police cars.

2

13. Mr. Collins fell to the ground in the middle of 22nd Street, and then got up and tried to run back in the direction that he had come from.

14. Officer Pedersen deployed his police dog Bolt to arrest Mr. Collins without any warning.

15. Bolt knocked Mr. Collins to the ground and held his left arm in a bite.

16. Mr. Collins thought he had been shot.

17. Once Mr. Collins was on the ground, on his stomach, he realized there was a dog attacking him.

18. Officers approached Mr. Collins with their guns drawn while the dog was still biting his arm.

19. One or more police officers yelled at Mr. Collins to throw his weapon away, which was still tucked in the back of his waistband.

20. Mr. Collins used the arm that was not being bitten by the dog, to pull his weapon out of his waistband, and threw it away.

21. An officer walked over to the gun, picked it up, and took it to a patrol car, while the dog dragged Mr. Collins on the ground, still biting him.

22. Mr. Collins repeatedly begged the officers to get the dog off him, and stated that he was not resisting.

23. Mr. Collins could not feel his legs.

24. Mr. Collins continued to scream that the dog was going to kill him, that he was bleeding, and generally asked for help.

25. Mr. Collins was able to see the flesh from his bicep and what looked like skin or fatty tissue, hanging from the dog's mouth as it continued to bite and tear at his arm.

26. Police were later unable to find the missing parts of Mr. Collins' arm.

27. The officer that had taken Mr. Collins' gun to the car removed the magazine, put it in an evidence bag, and placed it in a patrol car, before anyone tried to remove the dog.

28. The police dog did not comply with Officer Pedersen's verbal commands to get off Raymond Collins.

29. The police had to forcibly remove the dog from his hold on Mr. Collins' arm.

30. Raymond Collins sustained significant injury to his left upper arm, including "substantial tissue loss" (according to subsequent hospital reports), which was presumably ingested by the dog during the attack, since it was not recovered at the scene.

31. Police were unable to handcuff Raymond Collins behind his back due to the extensive injuries from the dog.

32. One of the victims from the alleged carjacking incident, Fabian Campbell, was brought to the scene of the dog bite, to attempt to identify Mr. Collins as a suspect in the carjacking.

33. According to a police report by Officer Galloway, "Fabian did not recognize the suspect. Fabian specifically said he did not recognize the red parts of the black jacket. Fabian could not positively identify the suspect by his face or other features because he did not see his face. He only saw the gun and clothing. He did recognize the subject had

white shoes on which Fabian said matched his shoe color. He was not able to identify the gun, but he said the gun was black and not a revolver."

34. Police never told Raymond Collins, a pedestrian, to stop.

35. Police never verbally identified themselves as police.

36. Police never gave Raymond Collins warnings that they would release a dog to attack him.

37. Mr. Collins did not pose any threat to any bystanders.

38. Mr. Collins was not trying to enter a residence.

39. Defendant Officer Pedersen deployed police dog Bolt to arrest Plaintiff Raymond Collins without any warning, and without probable cause to believe he had committed any crime.

40. Officer Pedersen allowed his police dog Bolt to remain on the bite for an extended, unreasonable period of time, causing extreme pain and severe injuries to Mr. Collins.

41. Officer Pedersen and other officers on the scene displayed callous indifference to an already-incapacitated suspect's suffering, by failing to remove Bolt from Mr. Collins' arm.

42. The use of excessive force by Officer Pedersen, by deploying Bolt without probable cause that Mr. Collins had committed a crime, and allowing Bolt to tear off portions of Mr. Collins' arm, and ingest them while Mr. Collins begged the officers to remove the dog, shocks the conscience, and is repugnant to the conscience of mankind.

## CLAIMS

**COUNT 1: Section 1983 claim (42 USC § 1983)**

43. The Fourth Amendment rights of Raymond Collins were violated under color of state law through the use of excessive force, which constituted an objectively unreasonable seizure.

44. The Fourteenth Amendment rights of Raymond Collins were violated under color of state law through denial of due process.

**WHEREFORE, Plaintiffs request the Court enter judgment as follows:**

A. Awarding compensatory, nominal, consequential, and/or punitive damages.

B. Awarding costs and attorney's fees under 42 USC § 1987.

C. Awarding Plaintiffs such other and further relief as the Court may deem just and proper.

DATED this 10th day of April, 2017.

*/s/Scott A. Ewing*
_____
SCOTT A. EWING
Attorney for Plaintiffs