**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raymond Collins, | No. CV-17-00157-TUC-RCC |
| Plaintiff, | **ORDER** |
| v. | |
| City of Tucson, et al., | |
| Defendants. | |

Pending before the Court is Defendant Barrie Pederson's Motion for Summary Judgment.[1] (Doc. 60.) Plaintiff filed a Response (Doc. 65) and Pederson a Reply (Doc. 67). The Court finds that Pederson's actions were objectively reasonable and subject to qualified immunity. The Court will grant summary judgment.

**I.    Summary Judgment Standard**

A court may grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non–moving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In addition, the dispute must be genuine; that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

---

[1] Pederson is the only remaining defendant in this matter. (Docs. 11-12.)

If the moving party has established that there is no genuine issue of material fact, then the non–movant must come forth with evidence that there is a genuine disputed factual issue that may change the outcome of the lawsuit in the non–movant's favor. *Anderson*, 477 U.S. at 248, 250; see *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). This showing does not have to be unquestionable; however, the non–movant "may not rest upon the mere allegations or denials of [his] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248; Fed.R.Civ.P. 56(e).

## II.   Non–movant's Factual Summary

Most facts are undisputed. It is undisputed that Officer Pederson was dispatched to an armed robbery incident when he encountered Raymond Collins. Mr. Collins says he was walking and carrying his sweatshirt, and the Court will assume Collins' assertion. It is uncontested that Pederson shined lights from his police vehicle on Collins, who immediately started to run away carrying a gun in his waistband.[2] Collins says he ran because he was a prohibited possessor and he knew he would be in trouble if caught. He does not challenge that he was then intercepted by Officer Matthew Merz. He doubled back to evade capture, running toward an occupied house with the gun still on him. Officer Pederson then stopped his vehicle in front of the residence and let his canine, Bolt, out of the car without warning Collins. By this time, Collins was approximately 20 – 25 yards away from Officer Pederson. He drew his weapon and followed Bolt. Bolt engaged Collins at the front door of the home, biting him and taking him to the ground facedown. When he was initially bit, Collins still had the gun in his possession, but after he had fallen to the ground he disposed of his gun at the officers' request. (Collins' Dep., Doc. 66-1 at 25, ln. 5-10; at 28, ln. 9-17.) Collins states that it was not until Officer Merz picked up the gun and walked behind him that Officer Pederson and another officer disengaged the dog from his arm. (*Id*. at 29, ln. 13-19; *Id*. at 30, ln. 15-22; *Id*. at 62-63.) Collins claims it took

---
[2] The parties disagree whether Officer Pederson was able to see the gun. Collins believes the gun was hidden, but at that time Officer Pederson reported on the police radio there was a gun on Collins' back hip. (Police Call Report, Doc. 61-1 at 6.) Whether Pederson initially saw the gun is inconsequential to the Court's determination.

between one to one and a half minutes before the canine was removed. (*Id*. at 28, ln. 2-4; *Id*. at 79, ln. 3-4.)

To get Bolt to let go, Officer Pederson used the flank–out maneuver. This move is performed by grabbing the canine's collar and pinching between his rear hips and stomach. Collins claims this process was difficult and took two officers to perform, but Officer Pederson claims it merely took "a second." (Pederson's Dep., Doc. 66-1 at 117, ln. 1-8; Collins' Dep., Doc. 66-1 at 78-79.) Collins claims that he suffered scarring and skin indentations from the muscle tissue that was chewed off, and still experiences pain and tingling in his arm.

The question, therefore, is not whether the facts are disputed, but whether the undisputed facts raise a genuine issue for trial.

Defendant argues that the dispute is genuine because a jury may find that Pederson's actions were unreasonable. Collins claims that the Court should deny summary judgment because there is a genuine dispute whether (1) Pederson should have given Collins a warning, and (2) over a minute was a reasonable amount of time to allow the canine to restrain him. Collins contends that once he was bit, he was no longer fleeing or resisting, and a jury could find that not removing the canine after Collins disposed of the gun was unreasonable and a constitutional violation of his Fourth Amendment rights.

"Because there are no genuine issues of material fact and "the relevant set of facts" has been determined, the reasonableness of the use of force is "a pure question of law." *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017), *cert. denied sub nom.* 138 S. Ct. 1283 (2018) (quoting *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007)). Even assuming Collins' statement of facts as true, Pederson's actions were reasonable as a matter of law.

///

///

///

///

### III. Standard for Use of Force

Use of force is measured under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Court must weigh the "nature and quality of the intrusion on the individual's Fourth Amendment interest" with the government's interests justifying the intrusion. *Id*. at 396. Factors for evaluating governmental interest include: (1) whether the claimant posed an immediate threat, (2) whether the claimant was actively resisting or attempting to evade law enforcement, and (3) the severity of the crime. *Id*. These factors are not all–encompassing, however, the court must examine all the circumstances surrounding the event. *Glenn v. Wash. Cnty.*, 673 F.3d 864, 872 (2011). "Other relevant factors include the availability of less intrusive alternatives to the force employed [and] whether proper warnings were given." *Id*. This evaluation is not in hindsight, but rather one of reasonableness of the officer's actions given the circumstances known to the officer at the time of the event. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split–second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

### IV. Discussion

#### A. Governmental Interests

Considering the facts in the light most favorable to the nonmoving party, and taking all reasonable inferences in his favor, the Court finds that Collins has not raised a genuine issue of material fact for submission to a jury. The Court will address the government's interests first.

///

///

///

///

**Immediate Threat.** This is the most important factor in the governmental interest analysis. *See Glenn*, 673 F.3d at 872. Given what Officer Pederson knew at the time, Collins was fleeing from an armed robbery, was heading toward an occupied residence, and still possessed a gun. Collins posed an immediate, dangerous threat to those residing in the home as well as to the officers. This factor weighs heavily in Officer Pederson's favor.

**Attempting to Evade Law Enforcement.** Collins was desperately trying to escape from law enforcement in any direction possible. Upon seeing Officer Pederson's police lights, Collins ran in the opposite direction. When Officer Merz intercepted him, Collins dodged him and headed straight for an occupied home. In fact, Collins did not stop running until Bolt submitted him. This factor is also in Officer Pederson's favor.

**Severity of the Crime.** Officer Pederson was in pursuit of an armed robber, and he believed that Collins was the suspect because of his elusive behavior. In addition, at the moment Officer Pederson released the canine, Collins was still armed and running toward an occupied residence. As explained below, the severity of the crime is much greater than other cases for which the Ninth Circuit found the use of a canine unreasonable. Based on the facts known to the officer at the time, the dangerous nature of the armed robbery, and Collins' possession of a loaded gun, this factor favors Officer Pederson.

**Warning.** Pederson concedes that no warning was given. Collins presents expert testimony stating that it takes a mere 1 – 2 seconds to give a warning and claims a jury could determine he should have given the warning in its governmental interest analysis. But, the issue is whether it was objectively reasonable not to give a warning. Collins does not contest that when Officer Pederson was exiting his vehicle, Collins was approximately 20 – 25 yards away. It is also not contested that Officer Pederson believed stopping to issue a warning would have made him lose valuable time and allowed Collins to reach the home and the people within. (Pederson's Separate Statement of Facts ("SSOF") 23, Doc. 61 at 5; Plaintiff's Statement of Facts ("PSOF") 23, Doc. 66 at 3.) Collins was still armed and swiftly approaching an occupied residence. Even if the choice was incorrect and Pederson

did have time to warn Collins, the split–second determination that time was of the essence was objectively reasonable.

**Availability of Other Means for Effectuating Arrest.** Both Officer Pederson and Officer Merz attempted less forceful means of stopping Collins, including shining the police lights on him and intercepting him to stop him from fleeing. After these measures failed Collins does not dispute that Officer Pederson released Bolt because Collins was heading toward a residential home and there was a distance of about 20 – 25 feet between Pederson and Collins. The fastest way to bridge this gap and prevent Collins from entering the residence and threatening the safety of the occupants was to send his dog after Collins. (SSOF 22, Doc. 61 at 5; PSOF 22, Doc. 66 at 3.) To halt pursuit in order to contemplate alternative ways of apprehending Collins would have lost valuable time. This too was an objectively reasonable determination.

  B. *Nature of the Intrusion*

Collins uses *Miller v. Clark County*, 340 F.3d 959, 960-61 (9th Cir. 2003), to support his assertion that the intrusion on Collins was unconstitutional and Pederson's use of force was unreasonable. Under the circumstances presented in *Miller*, the officer did not believe that a violent felony had occurred, but rather that the suspect had stolen a vehicle. *Id*. at 960. When officers attempted to pull over the vehicle the suspect he fled on foot. *Id*. The officer then saw a knife in the abandoned vehicle. *Id*. After searching a large property, officers gave a warning that if the suspect did not reveal himself a canine would be released. *Id*. at 961. Receiving no response, the officer released the dog, who disappeared into the underbrush. *Id*. After hearing the suspect scream, the officer took approximately 45–60 seconds attempting to locate the suspect. *Id*. Once he could see that the suspect was unarmed, the officer verbally ordered the canine to release him. *Id*. This took a little under a minute. *Id.* at 960. The suspect suffered severe shredding of his arm muscles–down to the bone. *Id*. at 961. The Ninth Circuit upheld summary judgment and determined that a canine bite was not excessive force. *Id*. at 966, 968.

*Miller* did not present the same urgency as this case. There, the suspect was hiding in a large yard. Here, Collins was quickly approaching an occupied home. There, the only weapon was an abandoned knife and the crime was a possible stolen vehicle. Here, Collins was armed with a gun and officers believed that just moments before he had used the gun to attempt an armed robbery.

Moreover, *Miller* reinforces Pederson's contention that keeping the dog on the bite was reasonable. *Miller* noted the importance of restraining a dangerous suspect to prevent access to lethal weapons. The court stated, "If [the officer] had ordered the dog to release Miller before [a second officer] arrived on the scene, as Miller proposes, Miller might have had a chance to hide or flee anew, *to recover a weapon*, to harm the dog, or to prepare to launch an ambush against the deputies. [The officer] was wise not to order the dog to release Miller. [The officer's] ordering the dog to bite, and hold, Miller was reasonably necessary under the circumstances." *Id*. at 968. Like in *Miller*, Officer Pederson took additional time to ensure the safety of the residents and officers by waiting until the gun was retrieved to release Bolt.

Also, while Collins claims that the whole encounter took up to a minute and a half, he concedes that this calculation is from the time of the bite to the time of removal, not from the time he disposed of his weapon. (Collins' Dep., Doc. 66-1 at 29, ln. 13-19; *Id*. at 79, ln. 2-4.) This means that he was unarmed for less than that time and was still within range of the gun until it was retrieved by Officer Merz. Collins states that Officer Pederson removed Bolt as soon as Officer Merz secured the weapon and walked behind Collins. (*Id*. at 30, ln. 15-20.) The Court cannot find that the officer's actions were objectively unreasonable, as they present a bite that lasted moments longer than the reasonable actions in *Miller*, but with escalated safety concerns and urgency.

In contrast, the Ninth Circuit has illustrated when a genuine issue exists as to whether an officer's release of a canine is reasonable, but these circumstances are also distinguishable. For instance, in the aptly named *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994), the court found a genuine issue of fact existed precluding summary judgment

when the canine bit a suspect three times, dragged him between 4 – 10 feet before releasing, and nearly severed his arm. *Id*. at 1441. The court determined that the quantum of force used by the canine was severe. *Id*. Furthermore, the officer should have been aware that it was more likely that mauling would occur because the dog was released to search for the suspect out of the immediate presence of the officer, and therefore the officer would not be able to call off the dog quickly. *Id.* In addition, the officer had no reason to believe the suspect was armed or a threat to others. *Id*. at 1441-42. Also, the underlying crime was not severe; he was initially stopped for a mere traffic violation. *Id*. Finally, the court determined that the two–hour ordeal was not the type of situation wherein the officers were "'forced to make split–second judgments' in circumstances that were 'rapidly evolving.'" *Id*. at 1443 (citing *Graham*, 490 U.S. at 397).

The facts of this case differ compared to those presented in *Chew*. First, Collins states Bolt did not bite his arm multiple times. (Collins' Dep., Doc. 66-1 at 72, ln. 16-21.) Second, he was knocked to the ground and not dragged. Third, Bolt was not searching for a hiding suspect, nor was he out of the presence of Officer Pederson. Fourth, the officers were in pursuit of a suspected armed robber. Finally, this was a rapidly evolving situation posing substantial danger to officers and residents alike. Collins had evaded police twice, had a loaded weapon, and was swiftly headed toward a residential home.

In addition, even taking Collins' claim that he suffered loss of muscle tissue, nerve damage, and some mobility as true, the Court finds that while Collins injuries were serious, the force used was still reasonable given the circumstances. The force was less than the force used in *Chew* and was more like *Miller* in the amount of time the canine was restraining Collins.

Defendant also contends that it was not reasonable to remove the canine using the flank technique, and a jury could find that this method caused unreasonable injury. (Doc. 65 at 7.) In support, he cites to the deposition testimony of canine handler Ernest Burwell, however, Burwell concedes that he has no training in canine bites, knows of no officers that use the technique, and has handled no canines that were trained to flank off a bite.

(Burwell's Dep., Doc. 67-1 at 3-6.) Furthermore, he explains the process of flanking as pinching the canine's testicles (Burwell Dep., Doc. 67-1 at 6, ln. 1-12), which is not the method Officer Pederson explained (Pederson's Dep., Doc. 61-1 at 116-117). Declarations must be made by a person with either personal knowledge or one who is competent to testify to the matters presented. Fed.R.Civ.P. 56(c). But, speculation is insufficient to create a genuine issue of material fact. *Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"); *Soremekun*, 509 F.3d at 985 (same). Furthermore, "deposition testimony that is not based on personal knowledge . . . is inadmissible and cannot raise a genuine issue of material fact sufficient to withstand summary judgment." *See Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091 (9th Cir. 1990). Burwell speculates, but admits he is neither knowledgeable nor competent on the issue of dog bites. Collins has not presented admissible expert evidence as to whether Collins suffered more injury because of this method, and the Court will not consider the erroneous explanation as raising a genuine issue whether flanking was an unreasonable method of removal.

In sum, taking all reasonable inferences in Collins' favor, the government's strong interests in capturing Collins by using a canine far outweighed Collins' interest in not being bitten. Therefore, the Court will grant Pederson's Motion for Summary Judgment.

**V.     Qualified Immunity**

Even if the Court found a genuine issue of material fact existed, the claim is precluded because Pederson enjoys qualified immunity.

An officer may be entitled to qualified immunity from a § 1983 suit "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011). To be clearly established, the right must be such that "every reasonable official would have understood that what he was doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks omitted). Indeed, the clearly established law cannot be a generalized inquiry, but must be specific to

the facts of the instant case. *White v. Pauly*, 137 S. Ct. 548, 552 (2017). But, even when an officer has violated a clearly established law, if the mistake was reasonable he is still entitled to immunity. *Blackenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007). In fact, qualified immunity covers "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Officer Pederson's actions were neither incompetent nor an intentional violation. Furthermore, because the Court has determined that Officer Pederson's conduct was reasonable, it need not reach the other elements. Nevertheless, given the facts illustrated in the cases cited by both parties, the Court finds that under the facts of this case the violation was not clearly established. *See Bogle v. Clackamas County*, 3:15-CV-0013-SI, 2017 WL 5490870, at *15 (D. Or. Nov. 15, 2017), *aff'd sub nom. Bogle v. Roberts*, 745 Fed. Appx. 31 (9th Cir. 2018) ("The existing case law regarding use of police dogs does not provide enough clarity to conclude that '*every* reasonable official would have understood . . . *beyond debate*' that their actions violated the law.") (quoting *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (emphasis and alterations in original).

Collins refers to *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998), to support his assertion that the duration and force applied by a canine bite could be unconstitutional. But, this case, like *Miller and Chew,* presents less exigent circumstances than the instant matter. In *Watkins* the suspect was hiding, there was no evidence he was armed, he was surrounded by officers, and the canine continued to bite the suspect even while an officer was pulling the suspect from a vehicle. *Id*. at 1090. Likewise, Collins points to *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th Cir. 1994), to show that the clearly established law need not be particularized to demonstrate that dog bites can be considered excessive force. But the situation in *Mendoza* is distinguishable. There the suspect was hiding for several hours, he was not given a warning, and the canine bit him after he had been handcuffed and hit on the head. *Id*. at 1358-59. When a dog is biting after the suspect is handcuffed, it would be clear to any reasonable officer that the action could be considered excessive force. In this case, however, it is not clear. The Court does not find that these

examples demonstrate that the law was so clearly established that under the facts of this case Officer Pederson would have known his actions patently violated the Constitution.

Accordingly, IT IS ORDERED Defendant Barrie Pederson's Motion for Summary Judgment (Doc. 60) is GRANTED. This case is DISMISSED with prejudice. The Clerk of Court shall issue judgment and close the case file in this matter.

Dated this 18th day of March, 2019.

_____
Honorable Raner C. Collins
Senior United States District Judge